19-2091 Alfaro-Huitron v. WKI. You may proceed. Chief Timcovich, and may it please the court, I'm Jerome Wesovich. I represent nine farm workers who were hired at unusually high wages and then denied the work. They were hired by a labor contractor named Jaime Campos, who acted on behalf of four separate growers. One of the growers remains in this litigation, and only one. I said one grower, and it actually refers to two related businesses that are operated by Dino Cervantes. But there's no material distinction between those two businesses. So for economy, I need to refer to the Cervantes defendants as the grower. The main issue is whether an agency relationship existed between the grower and the recruiter at the time that the recruiter hired the workers. The district court held no on summary judgment because the district court found that there was insufficient evidence of the amount of control that the grower exercised over the recruiter's activities. Should we be applying New Mexico law here? Yes, Your Honor. And what agency case do you ask us to apply here? In Hager, cited in our brief, the New Mexico Supreme Court adopted this section two of the second restatement. In section two, part three, it provides that independent contractors can be agents. The district court effectively held that independent contractors cannot be agents, not only in the Hager case, but also in the Jaramillo case. The New Mexico Supreme Court adopted . . . Well, doesn't it turn on control? I mean, it's not dispositive to say they can be agents or that they can't be agents. I mean, just because you're an independent contractor, if you're adequately controlled, you can be an agent. If you're not adequately controlled, you're not. Isn't that kind of the analysis we're going to apply? Absolutely, Your Honor. Control remains an element of agency even when the alleged agent is an independent contractor. But the degree of control is less for an independent contractor. An independent contractor agent exposes the principle to less liability. There's no liability for physical torts if it's an independent contractor, and that's the Jaramillo case. But if there's an independent contractor agent and if there's enough control, then the independent contractor agent can still bind the principle to contracts. I want to get to your point about what control does the principle exercise over the independent contractor agent. And there are two ways, and they're described really in the second restatement, Section 14N. And it's that the principle controls the result of the independent contractor's work. And as described in the New Mexico Military Institute case that we cite in our briefs, not only is there the control of the result, but there's also the ongoing control that the principle exercises in being able to terminate the agency relationship at any time. If the principle, during the course of the agency relationship, gives an instruction to the agent that the agent refuses to honor, the principle can always terminate the agency. But termination can't be the dispositive decision because you could have a contract saying, you are an independent contractor, I'm not going to control you in any way. Your actions are your own choice. However, if I'm ever unsatisfied with the net results of your performance, I can fire you. You wouldn't argue that was an agency situation, would you? No, and the reason is, in your hypothetical, you didn't say that the agent could act on behalf of the principle. My point only was you had said that the right to terminate somebody is key, and I was simply saying it really isn't key, because you could have that right to terminate, but no power to control, and nobody would say it was an agency. So it still comes back to the power to control. The element of control is necessary, but by describing exactly what result is required by the independent contractor, that is controlling the actions of the, that is sufficient control to allow for agency and agency relationship. If I ran an airplane company and I told a parts supplier, you've got to make this part to control the airplane, and here's exactly what I'm expecting of you. It has to have these variances, these tolerances, these various items. Make me the part, and I'll buy it. I'm giving a very precise test of what the result has to be, but you wouldn't argue that that was agency, would you?  Yeah, the third party is the one that makes the components. But, Your Honor, I must not be understanding. Go ahead. I don't want to disrupt your argument. You proceed the way you were going to argue. Go ahead. Just reset the clock and start your argument. We certainly agree that control remains a necessary element of agency, even in an independent contractor situation, but the principal does exercise control by prescribing the result and by being able to terminate at any time. I would emphasize this Court's decision in Quigley where it held that the principal need not control the manner of performance of an independent contractor agent. That is this Court's square holding in Quigley. And just to come back to this case, WKI goes out and recruits farm workers and then supplies it to various ranches and farms in New Mexico. They supply contract labor. Is that a fair way to describe what their services are? Yes, Your Honor, it was to four specific farms. The only four that they had relationships with. WKI was brand new. It had only relationships with four farms, and they are the four that are listed in the original contract here. It's not just generally farms. It's only those four. When it hired some, when WKI hired people, did it hire them for a particular farm like Cervantes or did, because they represented a variety of farms, or did it hire people in saying sometimes you're going to work at this farm and then when that harvest is done, you're going to work at this farm and when that harvest is done, you're going to work at somebody else's farm? The workers were hired on a specific contract and the workers were hired for all four farms on the contract. At the time of the hiring, the record shows that the recruiter did not designate which farm any of the workers would be assigned to. In fact, they could end up working for various farms, depending on their needs. Well, not according to the appellees. In their brief at page 17, actually it's at pages 5, 11, and 17, they say it three times, that they understood the contract to have their recruiter hire workers on their behalf and have those workers work for them for the entire four-month period. But they weren't parties to the contract, so it really doesn't matter what they understood. The question is, what was the contract? And the contract gave WKI the power to take these employees and move them from farm to farm as needed. Is that correct or not correct? It is not correct. The contract required the... I'm sorry, and I'm talking about the H-2A contract that appears in Appendix 80. That contract provided that the workers would have four months of work at these four farms. Yes. Thank you. That's a sufficient answer. Thank you. Could I ask you about the statutory claim? Because it's not clear to me how the AWPA was satisfied here. That's to protect employees. And employees are people who work for or suffered to work or paid to work or suffered to work for someone. And your clients never worked for Cervantes. So before you can get to Cervantes being a joint employer, it has to be an employer, doesn't it? And how is it an employer? Do you have any cases that apply to someone whose complaint under the AWPA is that they weren't hired as opposed to being mistreated after they were hired? No, I don't have a case. Because what I can say is that the Regulation 20 CFR 500.20H provides that employment is determined according to seven factors. That's what the district court held. That is what is in- You're talking about joint employment, whether they're joint employees. Whether- Yeah, but there's a predicate for that. You don't consider whether someone is jointly employed by two people, two employers, until you have shown that the person is employed. And none of your clients were ever working for Cervantes or even for WKI. So how do we get to the statute? Before you get to the Reg, you have to have the statute satisfied. And the statute requires someone to be an employer. The statute implements the Reg. I'm sorry, the Reg implements- Excuse me. The Reg implements the statute as the district court held. And the Reg is phrased in terms of power to control. Anticipatorily. And the statute and the legislative history and all the cases that even the appellees cite in their brief and that we cite, the APA is intended to cover recruitment, pre-work activities. You just said you don't have any cases. That's the situation. Do you have any case where someone who is not working has been held to be covered by AWPA? APA, is that how it's- That is generally how it's set. The reason I have no case now is because that is not the issue that was presented before the district court. The district court held- I realize that's not- the way it was argued did not focus on that. But it just makes it impossible for us to analyze whether there's joint employment before we've decided whether there's employment. The- even the- I would say that even the appellees have admitted on pages 5, 11, 17, that there was an employment relationship. The question is- They have? That there was- according to them, once the workers were provided to them, that would commence an employment relationship. That was the relationship that they intended to have with these workers. I don't think that's the statutory interpretation that the courts have given to the word employ. I thought it was the same as under the NLRA, isn't it? No, the FLSA, the Failing Labor Standards Act. It's separate and permit to work. But the regulatory interpretation of that covers pre-work activities. Because AWPA governs not just recruiting, that always happens prior to someone showing up at work, but also AWPA also covers transportation. That there's- there are- Maybe before they show up on the job, but they're still an employee. They have never done any work. And that's- and that's the complaint. Yes, Your Honor. I don't see- if you have something on that, I didn't- I didn't notice it in your briefing. We- we are not asking for a ruling from the court on joint employment. What we're asking from the court is the ability to weigh the seven factors that- that everybody up until now has described as- has- Has to determine whether an employee is employed by two different employers. But here, they're not employed by anybody. They haven't worked for anybody. Once they're hired- You say there's a reg that says that? Or it just talks about- I understand your- I understand your question to be- because they weren't even employed by WKI. That they- that there could be no analysis of the seven factors because of that. But they were hired by- by Jaime Campos. An employment relationship begins at the time that they were- that they agreed to accept work. They were employed starting then. They had not started- they had not started work. That's not disputed from- from the record. And I see my time is up. Thank you, counsel. Appreciate that. Let's hear from WKI or Cervantes. Good morning. May I please- the court, I may have misunderstood, your honor. I'm here on behalf of defendants Cervantes Agribusiness and Cervantes Enterprises. The court here should affirm the rulings of the district court, granting summary judgment in all regards for three reasons. First of all, as the court has asked, there is no agency basis for contractual liability of either of the two Cervantes defendants, number one. Number two, there is no joint employment. And the court properly found this as a matter of law at the district court level. And then third, counsel did not address the allegations of a civil conspiracy. Let's start with the first because this strikes me as just a quintessential agency relationship that WKI is supposed to go out and hire people for Cervantes Enterprises. You hire an agent to go find employees for you. It's just like the employee services. I'm trying to think of the- some of the big companies that do that. But the cases that you're referring to and relying on are all tort cases where the standard for liability is quite different from contractual liability. And this- how does this not- I mean, there's a factual question here whether there was this contractual relationship. But the control test that the district court used is just not what either the restatement second or the restatement third or the New Mexico courts have stated for contractual liability. Judge Hartz, the appellants here argue that the district court conflated issues of agency with independent contractor and employment. And that's the argument- I didn't do that. Well, I disagree. I think the district court was taking some of the uniform jury instructions, some of the agency principles. But ultimately the issue was, as Judge Ibble described earlier, the issue here is a right to control. It isn't. It's authority. If you hire somebody to go out and find employees for you- well, let's take exactly what happened here. To get the approval from the government to have immigrants come in and work, WKA had to have jobs lined up for the people that were coming in. It had to show that those jobs were lined up. And it showed that by providing an agreement that it had with the various farms, said, you bring the people here, we'll employ them. That's all you need for agency. If that's what happened, we're not talking about bringing summary judgment to the plaintiffs in this case. We're just trying to get the right legal standards set. So, Judge Hartz, I think we have to focus, as the district court did appropriately, on what the scope of the agency was. And the right to control here, the court focused on recruitment. The issue was recruitment. So if you look at the factual circumstances here, Mr. Campos comes to see Mr. Cervantes at the farm office and spends 15 or 30 minutes with him and says, I'd like you to sign this outsourcing agreement. It is an agreement to provide workers. That's all it says. We will agree to provide these. And it says so at a certain date and time, which, of course, never occurred. The government needed a guarantee. That was understood. It may not have been effectuated, and that may be something to be determined once the proper test is applied. But what the government wanted was something showing that if these workers come in from the United States or abroad, that they will have jobs. So there was a commitment by the farms that if you bring us these workers, we will put them on the farm for a four-month minimum, I think it is. That's a standard agency arrangement. The agent has the authority to hire these people, and the farms agree they'll bring them on and give them jobs. And that's all that's needed. There's no more control needed than that. The issue here, though, Judge, is what was that level of agency? In other words, an agency has parameters. What was the level of agency conferred on WICU, Mr. Campos, and by Cervantes? And I can tell you what I see here is happening, is you have a right under this agency agreement, you have a right to a job, not how they'll treat them once they're on the farm. That would be tort action, and there you'd need control. But to just give them a job for four months, that's all the control you need, is to say, if you bring me these people, I will hire them. And then you don't hire them. You breached your contractual arrangement that was entered into by an agent who had the authority, the explicit authority, to enter into this type of contract. Well, I hope the record is clear to the Court right now that none of that happened. In other words, these individuals were contracted by Cervantes, or outsourcing was contracted by Cervantes to provide employees. Cervantes stood ready to perform, and when the date came that they were to appear, they didn't appear. In fact, Mr. Campos and Wiki, after showing up at Mr. Cervantes' office and signing this document, Mr. Cervantes never heard from him again. That was the end of the discussion. And so when November comes around and these 15 employees are supposed to be provided, there's nobody who shows up. So you may not have broken the contract entered into by your agent, but your liability is a contractual liability, and the test is not the same as for tort liability. You may have plenty of defenses here. No, I agree. I'm not going to argue that. But the standard is not the standard applied by the District Court, which was the control that's necessary for tort liability. There isn't any authority for that that I can find. It's certainly not Restatement Second. I'm sorry no one cites the Restatement Third, which has superseded it. And apparently the distinction is clear in the New Mexico courts between the two types of contractual liability and tort liability. And I, of course, don't disagree with that, that there has to be that distinction. I would disagree that the District Court misunderstood that distinction in this case. I think that there's nothing in the order of the court that suggested that they were conflating tort and contract theories for agency. The court did recite from the Restatement Second for the definition of agency. And I'll come back to it. Did it not apply? Didn't it cite and state it was applying the control test, which is the test used to distinguish an independent contractor from an employee, which is irrelevant in the contractual context? I would agree the court did do that. The court did look at the right to control. And I would also agree with you that that may not be the proper parameters for a definition of agency. But my suggestion here is notwithstanding the court's perhaps conflating contract and tort theories for purposes of agency, the fact remains here that whether there's an agency relationship to the court's point, there is still a scope of that agency. The question here is, did the scope of any agency? The only agency conferred on wiki by the Cervantes defendants was to provide, and that's the word it says, to provide 15 employees at a certain date. That's it. Well, the government thought that the farms were obligating themselves. They read this contract. That's a fact question, though. That's an issue that the court below has not resolved. Again, I want to emphasize, I'm not saying you don't have defenses. Right. But it's got to be analyzed correctly. Well, and I agree with that. But there is no evidence of what the government thought, and the question gets back to, did Cervantes empower wiki, Mr. Compens, as an agent to recruit and the way to recruit and how to do so and what forms to fill out and who to process the Department of Labor? There's no evidence of any of that. When I say what the government thought, it's what the law requires. The law requires someone who's going to bring in workers under this program has to have jobs guaranteed for them if they come in. And since the government approved this program for wiki, I think it must have read the agreements, and I agree with you, they're not that clear this way, as guaranteeing them jobs, because wiki did not have any farms. It's saying I have contracts with farms to provide the workers. And maybe that wasn't the objective understanding of the farms with regard to the arrangement, but that's not the ground on which the court below ruled. And so I'm concerned that the right law be applied, and then you can have at it and win on any defense you might have. Well, and, of course, that is the role of this court. The question, though, fundamentally comes back to my opening, which is did the court here appropriately do this as a matter of laws, on summary judgment, with regard to the agency? And so whether the court misapplied tort theories for independent contractor employment in lieu of perhaps a proper analysis of agency, the question comes back here again. This is a cause of action for breach of contract. We have individuals who are suing Cervantes for breach of contract, and, of course, because there is no contract directly between these individuals and Cervantes, the appellants here are going through an agency analysis to try and suggest that there's liability arising out of agency. So you have to then, if you're looking at an agency analysis properly, you have to look then at what was the scope of that agency. There's no evidence. There's no evidence in the record, and that's why summary judgment was appropriately granted here. There's no evidence in the record whatsoever that Cervantes conferred an agency to WICI or COMPOS to do any of the things that are alleged as the basis for the contractual liability in this case. Are there any New Mexico cases that explore this liability of employers who use these employment agencies, you know, hire contract labor through a middleman? I mean, is there any New Mexico law that would shed further light on the facts here? We've cited none in the briefing, Your Honor, and I'm not aware of anything that will illuminate the question that's before us here, which is the outsourcing or these types of relationships as it relates to the ability to bind the employer through the outsourcing provider in this case. So I'm not aware of a case that would answer your question directly. I'm sorry. Go ahead. I was going to switch to the statutory claims. Well, I was just going to ask, regardless of whether you call it a contract agency or a tort agency, if you look at a contract agency, you have to look at the contract between Cervantes and WKI. Is that correct? That's correct. And does that contract have any provisions in there about how WKI would hire or not hire or interview or not interview or lie or not lie or any of those provisions? Absolutely not. So, I mean, I think we need to be sure we know what kind of agency we're talking about. But in either case, there is no contractual obligation that I could see controlling how WKI was going to perform its interviewing services or to accept liability or responsibility for the way WKI performed its responsibilities. Is that right? That's absolutely right. The only contract provision I know is if you provide people, we'll employ them. And the people were never provided. That's exactly right, Judge. And it bears emphasis that, again, that document that you're referring to makes no mention of wages, working conditions, hours, locations, all of the questions that you asked of Mr. Wesovich earlier about where they would work. There was no assurance that any of these individuals would work for Cervantes or ever. Any of these individuals would have ever worked for Cervantes or the Cervantes defendants or on their farms. None. None of these appellants can show that they were shown that's the farm they would work on or who they would work for or anything of that kind. So you're precisely right. This document was really, and most importantly, if you look at the effective date of the agreement, the effective date of the agreement by its own terms expressly was November the 10th, which was the date the individuals, the farm workers, were to arrive. So this document arguably never even became effective because it was a document to create a contract at some point in time when these individuals were provided. But I agree with you. To all of the points you made, this outsourcing services document is entirely silent. May I ask you a question about the statutory? Yes. Did you have a question? No, go ahead. Opposing counsel said that you acknowledged that these were employees, and I was wondering what your response was. I must say the brief focused on the factors that determine whether an employee is a joint employee, but I didn't see whether they were employees. Did you conceded that? No. No, we did not, of course. And with due respect to counsel, the district court noted a number of liberties taken in recitations to the record where the court would read the record and conclude the record in no way supported the arguments being made as a factual grounds. In fact, in some cases, the district court found that when they scoured the record for the cited references, they found to the contrary of what was being briefed by the appellants in this case. Did you argue? I didn't see a clear argument in the briefs here, but did you argue below that they weren't employees so you didn't even need to discern whether they were joint employees, whether they were joint employers? I don't know that we made it quite that succinctly. I assume that the issue that was before the court was whether they were joint employees because that's the only liability that would flow from the AWPA, which was the allegation of statutory claim. So we went right to the issue of joint employment. But you're absolutely right. We would argue that they were never employees. Any more to show? All right, counsel. Thank you. Your time's expired. Counselor, dismiss and the case shall be submitted.